553 A.2d 667

Michael B. NELSON

v.

STATE of Maryland.

No. 96, Sept. Term, 1988.

Court of Appeals of Maryland.

Feb. 24, 1989.

Nancy S. Forster, Asst. Public Defender (Alan H. Murrell, Public Defender, both on brief) Baltimore, for petitioner.

Beverly Peyton Griffith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief) Baltimore, for respondent.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS, BLACKWELL, JJ., CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired) Specially Assigned.

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

Michael B. Nelson was convicted by a jury in the Circuit Court for Baltimore City of murder in the first degree and related offenses. The State did not seek the death penalty. At the penalty stage of the trial, Nelson requested that a presentence investigation be obtained. The judge refused to order one. He imposed a life sentence and two consecutive one-year sentences. The Court of Special Appeals affirmed the judgments. *Nelson v. State,* No. 911, September Term, 1987, unreported, filed 28 July 1988. We granted certiorari. The sole question presented is whether the trial court erred in refusing to order a presentence investigation. We hold that the refusal was erroneous.

When, at the conclusion of the guilt stage of the trial, defense counsel requested the judge to order a presentence investigation, the State had no objection. The judge asked: "What would be the reason for the presentence investigation?" Defense counsel explained:

> As you know you have the discretion whether you want to suspend any part of the life sentence. You can give life and suspend a period of time. I want you to know some things about the client.

The judge expressed his feeling that the reports were extremely expensive and declared that it was not his "practice to order the report as a routine matter." He must be satisfied that there was a "need for the report." He said:

> If there is any aspect of the defendant that you cannot find out or can't indicate to me or something of concern

that requires any in depth consideration, I will be glad to order the report.

A disposition date was set.

On the disposition date, defense counsel renewed his request for a presentence investigation. Again the judge inquired whether there was any particular reason. Defense counsel answered: "I think it is important the Court should know as much as it can about this particular case." He thought the presentence report "would be more particular." The judge admonished defense counsel to "get away from the generalities." Defense counsel responded:

> Judge, if you are truly interested in this individual you know that a much more thorough investigation comes from an independent agent who is experienced and can get the background and record [of this 25 year old defendant].

The judge stated that a presentence report was not "indicated automatically." He believed that it was indicated "only when there is some particular reason...." He demanded that defense counsel give him a particular reason. The following colloquy ensued:

> [DEFENSE COUNSEL]: I told you that from the time that I asked, I think this Court should have a pre-sentence report before sentencing anyone in a murder trial so that it may know everything about the person. I can't possibly as an attorney do the job of the Probation Department it's trained and able to do. I think that in the interest of my client it should be done and in my fifteen years of practicing law I have never known the State's Attorney or Defense Attorney or Judge [to] turn down a pre-sentence investigation report. You are saying that you have no interest and if that is the case anything I say to you I don't think is going to make you have any interest.
>
> THE COURT: I am telling you that I don't like to order a pre-sentence investigating report, it is a quite involved procedure for the expenditure of resources from the State.

[DEFENSE COUNSEL]: And we have those resources available to us, under your theory we never do.

THE COURT: [T]he State does not have unlimited resources.

[DEFENSE COUNSEL]: Under your theory it never shows for a pre-sentence report because the lawyer is supposed to tell you the background, as I am supposed to tell you about my client. I don't know how he did on probation when he was on probation before.

THE COURT: All you have to do is check.

[DEFENSE COUNSEL]: That's not my job.

THE COURT: There is where we differ.

[DEFENSE COUNSEL]: I think the Probation Department is better prepared to render a PSI.

Of course, the judge prevailed in this stalemate. The bottom line of the judge's policy regarding presentence investigations was indicated by his comment to defense counsel: "In other words, you have to do the investigation yourself." It was only if that investigation "comes up with certain information" showing that a presentence investigation "would be helpful" would the judge order it. The judge imposed sentence without the benefit of a presentence investigation report.

Maryland Code (1957, 1986 Repl.Vol., 1988 Cum.Supp.), Art. 41, § 4-609(b) requires

[t]he parole and probation agents of the Division [of Parole and Probation to] provide the judge of the court with presentence reports or other investigations in all cases when requested by any judge.

Section 4-609(d) declares:

In any case in which the death penalty or imprisonment for life without the possibility of parole is requested ... a presentence investigation, including a victim impact statement, shall be completed by the Division of Parole and Probation, and shall be considered by the court or jury

before whom the separate sentencing proceeding is conducted....

Section 4–609(c)(1) prescribes:

Prior to the sentence by the circuit court of any county to the jurisdiction of the Division of Correction of a defendant convicted of a felony, or a misdemeanor which resulted in serious physical injury or death to the victim, or the referral of any defendant to the Patuxent Institution, a presentence investigation shall be completed by the Division of Parole and Probation and considered by the court, unless the court specifically orders to the contrary in a particular case.

The question presented calls for an interpretation of § 4–609(c)(1). Once again we are faced with legislative intent. We recognize that when we seek that intent we actually attempt to identify the "general purpose, aim or policy" reflected in the statute. *Kaczorowski v. City of Baltimore,* 309 Md. 505, 513, 525 A.2d 628 (1987). We accomplish this by looking at the language of the statute in the context within which it was enacted, for the " 'meaning of the plainest language' " is controlled by the context in which it appears. *Id.* at 514, 525 A.2d 628 (quoting *Guardian Life Ins. Co. of American v. Ins. Comm'r,* 293 Md. 629, 642, 446 A.2d 1140 (1982). Moreover, when we pursue the context of statutory language, we consider the many aspects of what is broadly termed legislative history, in order to bring into play any "material that fairly bears on the fundamental issue of legislative purpose or goal...." *Id.* at 515, 525 A.2d 628.

The [legislative] purpose, in short, determined in light of the statute's context, is the key. And that purpose becomes the context within which we apply the plain-meaning rule [of statutory construction].

*Id.* at 516, 525 A.2d 628.

The primary objective of the legislature with respect to presentence investigations shines bright and clear on the face of the laws. It is obvious from the plain language of the statutes, when read in context of their history, that the

legislature fully recognized the important role presentence investigations play in the always difficult function of imposing sentence. In capital cases a presentence investigation is compelled to be made and the report must be considered by the sentencing body. In other designated serious cases, a presentence investigation is required *unless* the court expressly intervenes by specifically ordering to the contrary. It seems that the legislature expected the presentence investigation to be made unless the judge had good reason to order otherwise. The legislative policy to encourage the use of presentence investigations is apparent. Clearly the legislature intended to promote the use of presentence investigations. Even though the investigation is not mandatory in the serious noncapital cases, it can be short-circuited only by the affirmative action of the sentencing judge.

Our view of the legislative policy with regard to presentence investigations is borne out by the history of Art. 41, § 4–609(c)(1). The Division of Parole and Probation, under its various names, has long been charged with the responsibility of making presentence investigations. As far as we have been able to trace, there appears to be no specific mention of "presentence investigation" in the Maryland Code prior to 1953. Chapter 625, § 1 of the Acts of that year amended Art. 41, § 126 of the Maryland Code (1951) to read:

The parole officers of the Board of Parole and Probation shall whenever feasible be available to the judges of [the circuit court of any county and the Criminal Court of Baltimore City] for the purpose of making presentence or other investigations ... as the said judges may from time to time request.

In 1968, the legislature, apparently with increasing recognition of the role played by presentence investigations, enacted ch. 457. It provided:

The parole agents of the Department shall provide the judges of [the circuit court of any county, the Criminal Court of Baltimore City, or any court of limited criminal

jurisdiction, including, but not limited to, the Municipal Court of Baltimore City, any people's court or any trial magistrate,] with presentence reports ... in all cases which may include commitment for two or more years, when requested by any judge.

Md.Code (1957, 1968 Cum.Supp.), Art. 41, § 124. The statute as enacted reflected a modification of S.B. 21 on which the act was based. The bill required the investigation to be made "unless requested by any judge not to provide such services in any case or cases" rather than only "when requested by any judge."

Acts 1972, ch. 532 deleted the requirement that a commitment be for two or more years to enable a request for a presentence report.

Acts 1976, ch. 118 amended Art. 41, § 124 by adding subsection (c), which read:

Prior to the sentence by the circuit court of any county or the Supreme Bench of Baltimore City to the jurisdiction of the Division of Correction of a defendant convicted of a felony, or the referral of any defendant to the Patuxent Institution, a presentence investigation shall be completed by the Division of Parole and Probation and considered by the court, unless the court specifically orders to the contrary in a particular case.

Nelson refers us to the testimony of then Deputy Secretary of the Department of Public Safety and Correctional Services given in support of S.B. 56 which resulted in Acts 1976, ch. 118. The Deputy Secretary said:

The decision to incarcerate a defendant is the most important single decision made by the criminal justice system. It is, therefore, essential, in our view, that the decision be a knowledgeable one and that the sentencing judges be provided with a quantity of information necessary to insure appropriate dispositions. In the absence of such information, many more offenders than need be are sentenced to institutions. In addition, a smaller but very significant number of defendants who are genuine

threats to public safety are not detected as such because of a lack of pre-sentence investigation.

He pointed out:

The Model Sentencing Act of the National Council on Crime and Delinquency, the Model Penal Code of the American Law Institute, the NCCD Standard Probation and Parole Act, the American Bar Association Probation Standards and the Proposed New Federal Criminal Code all recommend that a pre-sentence report be used by the sentencing judge in every felony case.

He declared:

The critical importance of the pre-sentence investigation is thus reflected in the recommendations, guidelines and standards promulgated by a wide range of authoritative bodies and national organizations.

He noted as "further testament to the value of such investigations, 27 states have enacted some form of mandatory presentence investigation legislation."

Acts 1982, ch. 494 added "or a misdemeanor which resulted in a serious injury or death to the victim" to the crimes triggering a presentence investigation pursuant to subsection (c), § 124 of Art. 41.

Acts 1983, ch. 297 added subsection (d). It made a presentence investigation mandatory "[i]n any case in which the death penalty is requested under Art. 27, § 412" and required that it "be considered by the court or jury before whom the separate sentencing proceeding is conducted...."

Acts 1987, ch. 237 prescribed, in addition to the death penalty, "imprisonment for life without the possibility of parole is requested under Art. 27, § 412 ..." as a circumstance calling for a mandatory presentence investigation.[1]

Thus, the law concerned with presentence investigation reports evolved to its present form, each step along the way indicative of a growing awareness and appreciation by the

---

1. Acts 1986, ch. 5, § 4 renumbered the statute as § 4–609.

legislature of the important role a presentence investigation report plays in the sentencing process. The broad and comprehensive picture of the defendant which it presents "provides the information necessary for the judge to impose an individualized sentence based on the circumstances of the particular case." Fennell & Hall, *Due Process At Sentencing: An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal Courts*, 93 Harv.L.Rev. 1613, 1627 (1980). We have observed that a judge is not "forced to bridle himself with mental blinders and thus enter the process of imposing sentence with impaired vision." *Logan v. State*, 289 Md. 460, 482, 425 A.2d 632 (1981). We summed up our thoughts in this way:

[That a judge has] broad discretion to appraise multifarious information from multitudinous sources has for some time been recognized to be both a necessary and desirable requisite to the prevalent modern penal philosophy of individualized punishment.

*Id.* at 481, 425 A.2d 632.

A trial judge is blessed with discretion in the exercise of many of his functions. The discretion is broad but it is not boundless. If the judge has discretion, he must use it and the record must show that he used it. He must use it, however, soundly or it is abused. Discretion is abused, for example, if the judge in his exercise of it is arbitrary or capricious, or without the letter or beyond the reason of the law. Of course, when a judge abuses his discretion, the action he takes in its exercise is erroneous. *See Ricks v. State*, 312 Md. 11, 31, 537 A.2d 612 (1988); *Crawford v. State*, 285 Md. 431, 451, 404 A.2d 244 (1979); *Bartholomey v. State*, 260 Md. 504, 530, 273 A.2d 164 (1971); *Brooks v. Daley*, 242 Md. 185, 196–197, 218 A.2d 184 (1966).

The trial judge was at odds with the legislature regarding presentence investigations. It is true that the legislature did not spell out guidelines for a judge's intervention to stop an investigation from being undertaken, but inherent in the discretion bestowed was that a judge have sound reasons for an order contrary to the general rule that an investiga-

tion be completed. For the reasons to be sound, they must be in accordance with and not in contravention of the legislative intent and policy. Here the judge adopted his own policy. In effect, he rewrote the legislation. The judge placed three conditions on the obtaining of a presentence investigation report. First, defense counsel himself must make an independent investigation. Second, that investigation must uncover an aspect of the defendant's background which required some elaboration or explanation beyond the ability of defense counsel to ascertain. Third, the judge must be satisfied that the aspect was pertinent to the imposition of a fair sentence. In other words, the judge would "order" a report only "when there is something that could be developed by that report that the lawyer, himself, or herself, could not develop...." This policy was predicated on the judge's belief, as we have seen from the judge's comments, that a presentence investigation was "extremely expensive."

There is no indication in the language or history of the statute that the legislature intended that presentence investigations be restricted because of the cost.[2] Nor do we see

---

**2.** We do not know whether the judge here follows the same policy when the defendant in a criminal cause is represented by the Public Defender. There can be gleaned from the annual Report of the Public Defender that in fiscal year 1988 about 28,000 defendants in criminal causes were represented by the Public Defender in the circuit courts, exclusive of juveniles, and about 65,000 defendants in the District Court, exclusive of juveniles. A sampling of regions and counties (the eastern shore, southern Maryland, Baltimore County, Montgomery County, and Prince George's County) indicates that the Public Defender represented about 50 percent of the defendants in criminal causes. In those cases the cost of the investigation demanded of the judge by defense counsel would come from the resources of the State in any event.

We note that

[t]he State's Attorneys in the several counties and the City of Baltimore shall make and transmit to the Division of Parole and Probation and the Division of Correction a resume of the facts and evidence adduced in each case tried in the circuit court of the counties of the State wherein a verdict of guilty was found, where the Division of Parole and Probation did not prepare a presentence investigation report, and where a sentence of 18 months or more

a legislative policy that the burden is on defense counsel to point out with particularity and to the satisfaction of the judge why a presentence investigation should be completed. Rather, as we have seen, the burden is on the judge to show why the investigation should not be completed.[3]

When the purpose of the legislation is determined in light of the statute's context, the inescapable conclusion is that the trial judge erred when he refused to allow a presentence investigation to be made. It follows that the Court of Special Appeals was wrong in concluding that the trial court "properly exercised its discretion." *Nelson v. State,* No. 911, September Term, 1987, unreported, filed 28 July 198, slip opinion at p. 12. Nelson is entitled to be resentenced. He shall have the benefit of a presentence investigation report unless the trial judge advances sound reasons why the investigation should not be made. These reasons must be within the ambit of the legislative intent and policy as we have found it.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN SO FAR AS IT AFFIRMS THE CONVIC-

has been imposed, so that each agency may have on file an abstract of each case in which application for parole may be made under the provisions of this article.
Maryland Code (1957, 1986 Repl.Vol., 1988 Cum.Supp.), Art. 41, § 4–610.

3. The State looks to the Maryland Rules to support its view that the refusal of the trial judge to permit a presentence investigation to be completed was a proper exercise of judicial discretion. Maryland Rule 4–341 provides, in relevant part:
    Before imposing sentence, the court may order a presentence investigation and report.
This was the substance of rules on the subject since before 1977. *See* former Rules 761(c) and 771(a).
    There is no conflict between the Rule and the statute. The Rule which we adopted in its present language and under its present number effective 1 July 1984 and amended as a matter of housekeeping effective 17 August 1987 was not intended, and did not, in any way whatsoever, affect § 4–609(c). Its language is necessarily broader than that of § 4–609(c) because the rule applies to all criminal cases, not only those falling within the policy established by the statute.

TIONS ENTERED IN THE CIRCUIT COURT FOR BALTI-
MORE CITY;

JUDGMENT OF THE COURT OF SPECIAL APPEALS
REVERSED IN SO FAR AS IT AFFIRMS THE SEN-
TENCES IMPOSED BY THE CIRCUIT COURT FOR BAL-
TIMORE CITY;

CASE REMANDED TO THE COURT OF SPECIAL AP-
PEALS WITH DIRECTION TO VACATE THE SEN-
TENCES IMPOSED BY THE CIRCUIT COURT FOR BAL-
TIMORE CITY AND TO REMAND THE CASE TO THAT
COURT FOR RESENTENCING IN ACCORDANCE WITH
THIS OPINION;

COSTS IN THIS COURT AND IN THE COURT OF
SPECIAL APPEALS TO BE PAID BY THE MAYOR AND
CITY COUNCIL OF BALTIMORE.