689 A.2d 78

**Timothy Ray SUCIK**

v.

**STATE of Maryland.**

**No. 16, Sept. Term, 1996.**

Court of Appeals of Maryland.

Feb. 14, 1997.

Geraldine K. Sweeney, Assistant Public Defender, Stephen E. Harris, Public Defender, on brief, Baltimore, for Petitioner.

Diane E. Keller, Assistant Attorney General, J. Joseph Curran, Jr., Attorney General, on brief, Baltimore, for Respondent.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI and RAKER, JJ., and ROBERT C. MURPHY, Judge (retired), specially assigned.

ROBERT C. MURPHY, Judge (Retired).

Timothy Ray Sucik was charged by criminal information with the fatal stabbing of his estranged wife, Marian Grace Sucik. As required by Maryland Code (1957, 1996 Repl.Vol.) Art. 27, § 412(b), the State formally notified him that it intended to seek a sentence of life without possibility of parole, which "means imprisonment for the natural life of an inmate under the custody of a correctional institution...." Code, Art. 27, § 412(f)(2). A person who receives such a sentence "is not eligible for parole consideration and may not be granted parole at any time during the term of the sentence." Maryland Code (1957, 1993 Repl.Vol., 1996 Cum.Supp.) Art. 41, § 4–516(d)(3)(i).

After Sucik was found competent to stand trial in the Circuit Court for Washington County, he exercised his Sixth Amendment right to represent himself. *State v. Miller,* 337 Md. 71, 86, 651 A.2d 845 (1994); *Snead v. State,* 286 Md. 122, 123–24, 406 A.2d 98 (1979).[1] Immediately following the jury's verdict that Sucik was guilty of first degree murder, the trial court announced that it would sentence him that day.

█ Maryland Code (1957, 1993 Repl.Vol., 1996 Cum.Supp.) Art. 41, § 4–609(d) requires a presentence investigation report (PSI) before a judge may sentence a person to prison for life without the possibility of parole. Specifically, this statute provides that the PSI include "a victim impact statement as provided under Article 27, § 781 of the Code" and that the PSI

> shall be completed by the Division of Parole and Probation, and shall be considered by the court ... before whom the separate sentencing proceeding is conducted....

---

1. The court provided "stand-by" counsel for Sucik.

No one—not the court, the State, Sucik,[2] or Sucik's stand-by counsel—even mentioned the statutory requirement that a PSI be obtained, and none was prepared.

At sentencing, the prosecutor presented to the trial court a letter in which Mary Reid, the victim's grandmother, told of the pain she felt since Marian was murdered. Ms. Reid accused Sucik of being a liar and having mistreated her granddaughter during the marriage. "I feel Tim has gone over the edge," she wrote, "and should have life in prison without parole." Along with Ms. Reid's letter, the trial court took into consideration certain letters and drawings Sucik had sent to various people as well as a competency report from the Clifton T. Perkins Hospital Center.

Sucik appealed to the Court of Special Appeals, raising three issues, one of which was that his sentence of life without parole was improper because the trial court had not obtained the required PSI. The intermediate court in an unreported opinion agreed that the PSI was mandatory but refused to vacate Sucik's sentence because he had "failed to make any request whatsoever for a presentence investigation" when the trial court declared that sentencing would be held the day of the verdict. Sucik, the court observed,

> was unquestionably aware that he faced a possible sentence of life without parole. In fact, [Sucik] did not even mention his wish to have a pre-sentence investigation considered when the trial judge was discussing what information he would consider with respect to sentencing. [The State] admits that, had [Sucik] asked for a pre-sentence investigation, the court undoubtedly would have postponed disposition until such time as a report could be obtained. [Sucik], by not objecting to sentencing without a PSI, waived his right to have this issue considered on appeal.

The Court of Special Appeals found no merit in Sucik's two other issues, neither of which is before us, and it affirmed the

---

**2.** A pro se defendant is not relieved of the obligation to raise objections or make requests in a timely manner. *Grandison v. State,* 341 Md. 175, 195, 670 A.2d 398 (1995).

judgment against him. Sucik then petitioned for a writ of certiorari, which we granted. The sole question before us is whether, in the circumstances, the sentence of imprisonment for life without the possibility of parole should be vacated notwithstanding the fact that Sucik did not ask the trial court for the PSI required by statute.

There are three possible sentences for first degree murder. One is death, which requires aggravating circumstances not present in this case. *See* Maryland Code (1957, 1996 Repl. Vol.) Art. 27, § 413(d). The second is imprisonment for life, and the third is the one imposed on Sucik: life imprisonment without the possibility of parole. This last sentence was created by the General Assembly by its enactment of Chapter 237 of the Acts of 1987. *See Collins v. State,* 318 Md. 269, 298, 568 A.2d 1, *cert. denied,* 497 U.S. 1032, 110 S.Ct. 3296, 111 L.Ed.2d 805 (1990).

When it established the new penalty of life without parole, the General Assembly found that

> [l]ife imprisonment without the possibility of parole is need- ed as a sentencing option in first degree murder cases because there are people committing heinous crimes; for example, serial killers, who are not eligible for the death penalty. In addition, a death penalty proceeding is a long, expensive process and a tremendous drain on resources. Life without parole would be less costly and would have the effect of preventing the defendant from killing again.

*Woods v. State,* 315 Md. 591, 601, 556 A.2d 236 (1989), quoting Senate Judicial Proceedings Committee, Summary of Commit- tee Report from the Committee Report System of the Depart- ment of Legislative Reference, 1987 General Assembly of Maryland at 3. It was for special cases—and special defen- dants—that the legislature created this enhanced penalty.

Whether an inmate is eventually paroled is ordinari- ly not a judicial determination. "Unless a statute provides to the contrary, courts are not empowered to determine whether or when a prisoner should be released on parole." *State v. Parker,* 334 Md. 576, 596 n. 9, 640 A.2d 1104 (1994). That

power rests with the executive branch, specifically with the Maryland Parole Commission, under procedures and criteria established by the legislature. *See,* Maryland Code (1957, 1993 Repl.Vol., 1996 Cum.Supp.) Art. 41, §§ 4–501(5), 4–504(a)(1); *Patuxent v. Hancock,* 329 Md. 556, 573, 620 A.2d 917 (1993).

Before 1987, Article 41, § 4–609(d)'s requirement that a PSI be prepared and considered by the court before sentencing applied only to capital cases. At the same time it crafted life without parole as a sentencing option, the General Assembly specifically added "imprisonment for life without the possibility of parole" as the only other penalty for which § 4–609(d) mandates that a PSI be prepared and considered by the sentencing court. Acts of 1987, ch. 237.

 The State agrees with Sucik that the provision in § 4–609(d) calling for a PSI is mandatory. *See Nelson v. State,* 315 Md. 62, 553 A.2d 667 (1989).[3] But the State suggests that the trial court may ignore this requirement and mete out a sentence of life without parole when a defendant has not requested a PSI.

 Section 4–609(d) imposes no duty on a defendant to request a presentence report. This is in contrast to the provision contained in Article 27, § 412(b) placing on the State the burden of notifying the defendant that he or she faces a possible sentence of life without parole. In essence, the State asks this Court to construe the statute as implying that a defendant is obliged to request a PSI if he or she wants the court to weigh its findings when deciding whether to impose a sentence of life without parole. Manifestly, we cannot read into the statute a requirement that it does not contain. "Be-

---

**3.** In response to *Nelson v. State,* the General Assembly amended Article 41, § 4–609(c)(1) to make the preparation of presentence reports discretionary in cases involving misdemeanors that result in death or serious physical injury and felonies in general. Acts of 1990, ch. 256; Department of Legislative Reference Bill Analysis of SB 272. Significantly, however, the legislature left intact the language in § 4–609(d) requiring presentence reports to be prepared and considered before a court imprisons someone for life without possibility of parole.

cause an enhanced punishment statute is 'highly penal, [it] must be strictly construed.'" *Taylor v. State,* 333 Md. 229, 237, 634 A.2d 1322 (1993), quoting *Jones v. State,* 324 Md. 32, 38, 595 A.2d 463 (1991).

■ The statute does, however, create a duty for the trial court. Before imposing this particular sentence, which is a punishment second only to death in its severity, the court *must* consider the findings contained in a PSI prepared by the Division of Parole and Probation. If the court fails to do so, it errs by imposing a sentence of life imprisonment without the possibility of parole.

The statutes that concern presentence investigations indicate "a growing awareness and appreciation by the legislature of the important role a presentence investigation report plays in the sentencing process." *Nelson v. State, supra,* 315 Md. at 69–70, 553 A.2d 667. It is to ensure that sentences are fair and just—both to defendants and to society at large—that the General Assembly mandated obtaining PSIs in cases where the penalty could be death or imprisonment for life without possibility of parole. A PSI in a case where the possible penalty is life without parole ensures that that sentence will be imposed only after all relevant considerations are taken into account.

In its brief, the State "agrees that a PSI serves general societal goals" but contends that the failure to obtain one in this case is but "a procedural error," which cannot be attacked for the first time on appeal. We disagree. When a trial court ignores the PSI requirement, it acts counter to the requirements of the very law that makes possible a sentence of life without parole. Sucik's sentence does not rest on the foundation the General Assembly mandated for cases such as his.[4]

---

4. The State's reliance on the death penalty case of *Williams v. State,* 342 Md. 724, 763 n. 13, 679 A.2d 1106 (1996), for a contrary result is misplaced. There, in dictum involving an issue not then properly before us, we said "that the unobjected to failure to prepare the PSI . . . may not be grounds for reversal." We did not thereby purport to

For these reasons the Court of Special Appeals abused its discretion in declining to consider the error raised by Sucik, despite his having failed to preserve the issue.

We vacate his sentence of imprisonment for life without the possibility of parole and remand his case to the Circuit Court for Washington County for resentencing.[5]

*JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED, AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO VACATE THE SENTENCE AND REMAND THE CASE TO THE CIRCUIT COURT FOR WASHINGTON COUNTY FOR A NEW SENTENCING HEARING. COSTS TO BE PAID BY WASHINGTON COUNTY.*

---

conclude, one way or the other, whether failure to object to the absence of a PSI constituted a waiver of that mandatory requirement.

5. We do not mean to imply that when, pursuant to a plea agreement, the defendant and the State agree to a sentence of life imprisonment without parole, the court must first consider a presentence investigation.