771 A.2d 550

**Roger T. SCULLY,**

v.

**Laszlo N. TAUBER.**

**No. 1357, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

May 1, 2001.

Alan F. Post, Rockville, for appellant.

Stephen C. Glassman (Michael E. Winer and Glassman, Michael & Winer, on the brief), Vienna, VA, for appellee.

Argued before SALMON, DEBORAH S. EYLER, and RAYMOND G. THIEME (Ret., Specially Assigned), JJ.

SALMON, Judge.

On May 4, 1999, Dr. Laszlo N. Tauber filed a four-count complaint in the Circuit Court for Montgomery County against his former attorney, Roger T. Scully. Dr. Tauber alleged that he had been injured by Scully's actions in a case filed in New York City. Alan F. Post, Esq. ("Post"), filed an answer on behalf of Scully.

The circuit court issued a scheduling order on August 9, 1999, which set forth a discovery completion deadline of January 31, 2000. In the latter part of December 1999, Dr. Tauber's counsel sent Post a notice that he would take Scully's deposition on January 27, 2000, at 9 a.m. Post received the notice on January 4, 2000. Three days later, on January 7th, Post met with Stephen Glassman, Esq. ("Glassman"), one of Dr. Tauber's attorneys. Post told Glassman that he had been diagnosed with a "stromal cell tumor" located in his stomach wall and that Scully's deposition would have to be rescheduled because he was being admitted to Suburban Hospital on January 17th for an operation to remove the tumor. Post

further advised Glassman that he had no expectation of being able to attend the deposition scheduled for January 27th.

Glassman, on January 26, 2000, sent a two-sentence letter to Post, which read as follows:

We intend to go forward with the deposition of your client tomorrow pursuant to our Notice of Deposition, in light of the fact that you have failed to obtain an Order extending the discovery deadline for that deposition. If you fail to appear, we will be moving for sanctions against you and your client.

At 9:05 a.m. on January 27th, Glassman called Post's office and was advised that Post was unavailable for the deposition because he was in the hospital [1] and, as a consequence, neither Post nor Scully would appear at the deposition.

On February 2, 2000, counsel for Dr. Tauber filed a motion to extend time to take the deposition of three out-of-state expert witnesses. Movant asked that the discovery period be extended until March 7, 2000, to take the three depositions. Dr. Tauber's attorney represented that the requested extension would not "compromise" the scheduled trial date. The motion concerning the three out-of-state experts was granted. No request was made to extend the time to take Scully's deposition.

On February 8, 2000, counsel for Dr. Tauber filed a motion for immediate sanctions against Scully based on the fact that neither Scully nor his counsel had appeared for the January 27th deposition. Movant asked the court (1) to grant a default judgment against the defendant, (2) to allow plaintiff to "proceed to prove its [sic] damages" and (3) to award Dr. Tauber "costs and reasonable attorney's fees for the [d]efendant's failure to appear at the deposition and for the [p]laintiff filing this Motion." Contrary to Maryland Rule 2–311(d), the motion was not supported by an affidavit.[2] Movant nevertheless

---

1. At oral argument before us, Glassman admitted he was told on January 27th that Post was in the hospital.

2. Maryland Rule 2–311(d) provides:

alleged that in a conversation between Glassman and Post, on January 7, 2000, Post had merely "alluded to his possible need to reschedule the deposition for medical reasons." According to the allegations in the motion, Glassman told Post that if he wanted to reschedule the deposition he would have to file a motion to extend the discovery deadline and that if he did so Dr. Tauber would not object. After conceding that someone from Post's office had told a representative from Glassman's office on the date of the deposition that Post could not attend the deposition because of "medical reasons," movant nevertheless asserted that it was obvious that Scully "has no inclination to comply with any discovery request or discovery orders and that failing to show up a[t] the deposition is just another example of [d]efendant's disregard for the discovery process. . . ." Significantly, however, movant provided no other examples of Scully's purported "disregard."

Scully did not respond to the sanctions motions, and on February 29, 2000, the circuit court entered an order granting a judgment by default against him. On March 20, 2000, Scully filed a motion to vacate the default judgment, which was supported by Post's affidavit. The affidavit read, in material part, as follows:

3. On or about January 4, 2000, I received by first class mail, a Notice of Deposition of the [d]efendant on January 27, 2000. Plaintiff's counsel made no attempt to contact me regarding available dates, prior to issuing the notice for January 27.

4. On January 7, 2000[,] I met with Stephen Glassman, one of [p]laintiff's counsel at the Courts of Appeal Building in Annapolis in connection with a matter in which we were opposing counsel. At that time, I advised Mr. Glassman that I had been diagnosed with a "stromal cell" tumor arising from the stomach wall, and that the deposition would

---

A motion or a response to a motion that is based on facts not contained in the record or papers on file in the proceeding shall be supported by affidavit and accompanied by any papers on which it is based.

have to be rescheduled, since I was being admitted to Suburban Hospital on January 17 for a gastric resection for the removal of the tumor, and had no expectation of being able to attend the deposition on January 27. I was released from the hospital on January 28, 2000, and was not able to return to my office until the end of February.

5. On January 26, 2000[,] Mr. Glassman, apparently faxed a letter to my office advising that he would go forward with the Deposition and seek sanctions against [d]efendant and counsel if there was no appearance. On the morning of the scheduled deposition, Mr. Glassman was advised on the telephone by my office that I was still unable to attend for medical reasons. I was still a patient at Suburban Hospital on January 27, 2000.

6. Plaintiff's counsel never consulted with me prior to sending out the notice setting January 27, or made any attempt to reschedule the deposition after learning of my hospitalization, yet they sought, and received a 35 day extension of discovery in order to take three out of state depositions.

Plaintiff filed an opposition to the motion to vacate judgment of default. The opposition, again in violation of Maryland Rule 2–311(d), was not supported by an affidavit but, nevertheless, contained numerous "facts." Among the "facts" alleged were the following:

2. Representations made by counsel for the [d]efendant in his pleading are inaccurate. Plaintiff's counsel concurs that the parties had a face to face meeting at the Court of Appeals on January 7, 2000. Further, it is agreed that at the time Alan F. Post, ... stated for the first time, that he may be unavailable for the scheduled deposition on January 27, 2000, due to a possible medical issue. At that time, [p]laintiff's counsel advised Mr. Post that due to the fact that the discovery deadline was upon the parties, if Mr. Post was unable to proceed with the deposition as scheduled, he should file a motion to extend the discovery deadline. Defendant's counsel was

advised that [p]laintiff would interpose no objection and would coordinate a new deposition date.

3. Plaintiff's counsel heard nothing further from Mr. Post. No motion for extension of time or motion for protective order was filed by the [d]efendant.

4. Counsel for the [p]laintiff wrote a letter [the faxed letter of January 26th, apparently] to Mr. Post confirming the deposition date and received no response. Neither Mr. Post nor his client appeared for the deposition. The court reporter and [p]laintiff's counsel gathered on the morning of the deposition. At that point Mr. Post's office advised that neither he nor his client would be appearing.

A hearing on the motion to vacate was held on May 4, 2000. The motion was argued by Post on behalf of the defendant and Michael Weiner on behalf of Dr. Tauber. Glassman was not in attendance.

In regard to the conversation with Glassman, the motions judge and Post had the following colloquy:

THE COURT: Well, when you told Mr. Glassman you were going in the hospital, did he say okay, in that case your client doesn't have to show up at the deposition?

MR. POST: I think it was more like: Steven, we're not going to be able to make the deposition; I'm going to be in the hospital; can we reschedule it when I get out.

THE COURT: And he said?

MR. POST: Yes.

THE COURT: Okay.

MR. POST: Or indicated—somehow or other said okay, there's not much I can do about that. If you're going to be in the hospital, you can't be at the deposition, something to that effect. Don't remember exact words.

THE COURT: Well, it helps—you know, when you say he said something to that effect, I don't really know what that means.

MR. POST: Well, whatever the words were, it was an acknowledgment of the fact that I was not going to be able to be at the motion [sic].

THE COURT: And, therefore, your client—

MR. POST: And, therefore, my client was not going to appear without counsel—

THE COURT:—was not expected to be there?

MR. POST:—obviously.

THE COURT: Okay.

At oral argument, Post also told the motions judge that he spoke to Amy Oberst, "an associate with Mr. Glassman," sometime during the week that followed his January 7th conversation with Glassman. According to Post, he "confirmed [with Ms. Oberst] that [he] was going in the hospital."

After considering argument from both counsel, the motions judge said that there was "no factual [or] legal basis for me to" vacate the judgment. Accordingly, the motion was denied.

On July 5, 2000, after Dr. Tauber presented evidence as to damages, the court entered a judgment in favor of Dr. Tauber against Scully in the amount of $3,853,721.72. This timely appeal followed.

## I. QUESTION PRESENTED

Did the trial court abuse its discretion in failing
to set aside the default judgment under
the circumstances of this case?

## II. ANALYSIS

It is true, as appellee points out in his brief, that "[a] trial court is entrusted with '[a] large measure of discretion ... in applying sanctions for failure to comply with the rules relating to discovery" (citing *Lynch v. R.E. Tull & Sons, Inc.,* 251 Md. 260, 247 A.2d 286 (1968), and *Tydings v. Allied Painting and Decorating Co.,* 13 Md.App. 433, 436, 283 A.2d 635 (1971)). Similarly, a motions judge is accorded considerable discretion in deciding whether to set aside the grant of a

default judgment. Nevertheless, in order to decide whether a judge's imposition of the ultimate sanction of dismissal is warranted or whether a default judgment should be set aside, an appellate court must first determine whether the trial court exercised its discretion.

The exercise of discretion must be clear from the record. *Nelson v. State*, 315 Md. 62, 70, 553 A.2d 667 (1989). When it is not clear that discretion was exercised, reversal is required. *Maus v. State*, 311 Md. 85, 108, 532 A.2d 1066 (1987). In this case, determining whether there was an exercise of discretion is made easy. The motions judge explicitly said, "I am not going to vacate the judgment. . . . There is no factual [or] legal basis for me to do so." In our view, however, there was both a legal and a factual basis to vacate the default judgment.

The only facts that were appropriately before the court when it denied the motion to set aside the default were: (1) the facts set forth in Post's affidavit (Md. Rule 2–311(d)) and (2) statements made, upon personal knowledge, by Post in open court. *See Surratt v. Prince George's County*, 320 Md. 439, 469, 578 A.2d 745 (1990) (explaining that statement by a lawyer in open court, based upon personal knowledge, is the "functional equivalent" of an affidavit or testimony under oath). The motions court had no right to consider any "fact" set forth by appellee in his opposition due to appellee's failure to comply with Rule 2–311(d).

The facts appropriately before the trial judge showed that (1) the defendant had done nothing personally that would justify a default sanction, (2) Post and Scully had an exceptionally meritorious reason why they did not appear at the deposition, and (3) opposing counsel knew full well, prior to the January 27th deposition date, that the deposition could not go forward due to Post's hospitalization. In view of those facts, the court's denial of the motion to set aside the default judgment on the ground that there was no factual or legal basis to do so amounted to a refusal to exercise discretion. But even if we assumed that the trial judge did exercise his

discretion when he denied the motion, we would still have reversed on the ground that the denial amounted to an abuse of discretion.

There are cases, as appellee points out, where the ultimate sanction of dismissal of the plaintiff's case or the grant of a default judgment against a defendant have been upheld even though the offending party has not acted contumaciously. *Berkson v. Berryman,* 63 Md.App. 134, 142, 492 A.2d 338 (1985) (no abuse of discretion in imposing the ultimate sanction for a party's violation of a discovery order even though the offending party's actions were neither wilful nor contumacious); *Rubin v. Gray,* 35 Md.App. 399, 400, 370 A.2d 600 (1977) (Gravest sanctions "may be imposed for a deliberate attempt to hinder or prevent effective presentation of defenses or counterclaims, or for stalling in revealing one's own weak claim or defense."); *Kipness v. McManus,* 14 Md.App. 362, 364 n. 1, 286 A.2d 829 (1972). In all the cases that we have found where the offending party had acted non-contumaciously and where the trial court either dismissed the plaintiff's case as a sanction or entered a default against a non-complying defendant, the offending party had no valid excuse for failing to comply with discovery orders and/or for failing to comply timely with discovery requests by the opposing party. In the subject case, neither Scully nor Post was alleged to have been dilatory in providing discovery prior to January 27th. And, it is difficult to imagine a more valid excuse for failing to attend a deposition than the one set forth in Post's affidavit.

The appellate courts of Maryland have overturned the imposition of the ultimate sanction of dismissal against a plaintiff or a default judgment against a defendant when there was no record of inordinate delay or contumacious conduct on the part of the party against whom sanctions were sought. *See Williams v. Williams,* 32 Md.App. 685, 695, 363 A.2d 598 (1976) (The court abused its discretion in dismissing a case when there was no evidence of delay or contumacious conduct on the part of the plaintiff who was not involved in her counsel's postponement for his own convenience.); *see also*

*Hart v. Miller,* 65 Md.App. 620, 501 A.2d 872 (1985). In *Hart,* this Court reviewed the conduct of an attorney whose dilatory actions ultimately caused a circuit court judge to dismiss the plaintiffs' case. Although the conduct of plaintiffs' counsel in *Hart* was far more dilatory than that of Post in this case, we reversed the dismissal.

Defense counsel in *Hart* filed a motion to compel discovery and to postpone trial because plaintiffs' counsel had failed to answer interrogatories. *Id.* at 622, 501 A.2d 872. In response to the motion to compel, the trial judge directed that plaintiffs answer interrogatories by January 28, 1984. *Id.* Thereafter, defense counsel agreed to extend the time for answering interrogatories for six days. *Id.* After the extended deadline passed, plaintiffs' counsel still did not answer interrogatories. *Id.* Defense counsel waited more than three weeks and, on March 26, 1984, told plaintiffs' attorney that he would request the court to grant "appropriate relief" if the interrogatory answers were not received by April 3. *Id.* On April 6, defense counsel filed for dismissal of the case on the ground that interrogatory answers had still not been filed. *Id.* Plaintiffs' counsel filed an opposition to the motion. *Id.* A hearing on the motion to dismiss was set for May 17, 1984, which was approximately one month prior to the scheduled trial date. *Id.* Shortly before the May 17th hearing, plaintiff's counsel finally filed his clients' interrogatory answers. *Id.*

In *Hart,* plaintiffs' counsel advanced several excuses for his failure to obey the court's order, *viz:* counsel was absent from his office for five consecutive months in 1983 due to a back injury; counsel had "recurring medical problems" between June 1983 and May 1984; one of the plaintiffs, Paul M. Hart, underwent surgery and was hospitalized until the first week of April 1984; one of the plaintiffs had submitted to a deposition on May 15, 1984, and had produced extensive discovery prior to the May 17th hearing date. *Id.* at 623, 501 A.2d 872. Despite these excuses, the trial judge (Honorable Perry G. Bowen) dismissed the plaintiffs' complaint for failure to comply with his order to file interrogatories no later than January

28, 1984. *Id.* at 624, 501 A.2d 872. In the course of his opinion, the trial judge said:

"Now when you get an Order from the court to do something by way of discovery and Perry Bowen's name is signed to the bottom of that Order, that means that your time has run out. You better do what it says or don't complain when the sanction is requested and granted."

*Id.* at 625, 501 A.2d 872.

In reversing the lower court's judgment, Judge Getty for this Court said:

The alternatives available to a trial judge in imposing sanctions for failure to comply with discovery, answering interrogatories herein, clearly demonstrate that the trial judge is required to consider every aspect of the case and then choose the most appropriate remedy. Discretion signifies choice. Consideration of the various elements of the problem does not preordain a single permissible conclusion. *See* Rosenberg, *Judicial Discretion of the Trial Court, supra,* cited in *Shimer v. Edwards,* 482 A.2d 399 (D.C.App. 1984). Failure to exercise choice in a situation calling for choice is an abuse of discretion, because it assumes the existence of a rule that admits of but one answer. *See Brown v. United States,* 372 A.2d 557 (D.C.App.1977), *cert. denied,* 434 U.S. 921, 98 S.Ct. 397, 54 L.Ed.2d 278 (1977). When, as in the present case, the trial court recognizes its right to exercise discretion, but then declines to exercise it in favor of adhering to some consistent or uniform policy, it errs. *Berryman v. United States,* 378 A.2d 1317 (D.C.App. 1977). *See, generally, Johnson v. United States,* 398 A.2d 354 (D.C.App.1979). We recognize that consistent patterns may arise from the exercise of judicial discretion, consistency, however, must remain as the result and not the objective.

*Id.* at 626–27, 501 A.2d 872.

Later, in *Hart,* Judge Getty continued:

Dismissal runs counter to valid societal preference for a decision on the merits. The trial court had already conclud-

ed that appellants' counsel had done "nothing wilful, nothing contumacious, nothing intentionally overreaching . . . he didn't get it done when the court ordered him to do it." In view of the status of the case at the time of the Motions Hearing, together with the lack of wrongful conduct on the part of appellant Hart, and the realization that the statute of limitations had run on this cause of action, we hold that it was an abuse of discretion to dismiss the case thus precluding Hart from pursuing his claim for the grievous personal injuries and monetary damage he sustained. Some sanction as to counsel was appropriate; dismissal was not.

*Id.* at 628, 501 A.2d 872.

Based on the uncontradicted facts presented to the motions court, Post was physically unable to attend the deposition scheduled for January 27th. It would be entirely unreasonable to expect Scully to be deposed without his counsel being present. Based on the January 7th conversation between counsel for the parties, coupled with what Post told Ms. Oberst, appellee's counsel knew full well by the time Post entered the hospital on January 17th that the deposition could not go forward as scheduled. Under these circumstances, plaintiff's counsel, knowing that he could not complete discovery by January 31, 2000, should have applied for an extension of the discovery deadline. It is inconceivable that any judge would deny the plaintiff an extension under these circumstances. If dismissal of the plaintiffs' case was not an appropriate sanction in *Hart,* it follows that failure to set aside entry of a default judgment against a defendant in a case like the one *sub judice* was likewise an abuse of discretion. Neither Scully nor his attorney had done anything wilfully to delay discovery, and neither had acted contumaciously.

In his brief, Dr. Tauber asserts that Scully "disregarded the Scheduling Order, disregarded the discovery rules, and failed to take it upon himself to seek an extension of the discovery deadline." First of all, appellee cites no authority, and we know of none, why the defendant should be required to ask for an extension of the discovery deadline. After all, it was the plaintiff who wanted the discovery, and based on the facts

appropriately before the motions court, Glassman's tacit consent to the rescheduling of the deposition was not contingent upon Post's obtaining an extension of the discovery deadline. Moreover, appellee points to nothing in the record to support the allegation that either Scully or Post "disregarded the Scheduling Order." Instead, defense counsel told opposing counsel that he could not attend the scheduled deposition and gave a legitimate reason for his non-attendance.

■ It is true that under certain circumstances a motion for protective order should be applied for when a litigant and/or his/her attorney cannot attend a deposition. *See* Rule 2–403. But according to Post's representations to the court, Glassman knew before the scheduled deposition that the deposition would need to be rescheduled, and although Glassman never explicitly agreed to reschedule the deposition, he did acknowledge the fact that Post was unable to attend because of a medical problem and that he should not expect Scully to be there. Under the circumstances, it would be hyper-technical for Post to expect that a brother lawyer would require him to get a protective order.

■ When engaged in even the most contentious litigation, attorneys should be ever mindful that the practice of law is a profession and that attorneys are expected to extend professional courtesy to opposing counsel when health problems or other unforeseen events prevent attendance at scheduled proceedings. Moreover, parties are expected to contact the opposing party and attempt to resolve discovery disputes amicably prior to seeking sanctions from the court. *See* Rule 2–431.[3] Once Glassman knew Post was in the hospital, he made

---

3. Maryland Rule 2–431 reads:

**Certificate requirement.**

A dispute pertaining to discovery need not be considered by the court unless the attorney seeking action by the court has filed a certificate describing the good faith attempts to discuss with the opposing attorney the resolution of the dispute and certifying that they are unable to reach agreement on the disputed issues. The certificate shall include the date, time, and circumstances of each discussion or attempted discussion.

no attempt to reschedule the deposition or otherwise informally resolve the matter. Such conduct does not reflect well on the practice of law, and most assuredly should not be rewarded by the grant of a default judgment.

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR A TRIAL ON THE MERITS; COSTS TO BE PAID BY APPELLEE.**