720 A.2d 1182

Jacklyn Kay HEINEMAN, et al.

v.

**Julie W. BRIGHT, et al., Personal Representatives of the Estate of G. Wendel Heineman.**

**No. 1557, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

Oct. 1, 1998.

Reconsideration Denied Dec. 29, 1998.

Paul M. Weiss, Baltimore, for Appellants.

Kurt J. Fischer (Shale D. Stiller, Brett Ingerman and Piper & Marbury, L.L.P., on the brief), Baltimore, for Appellees.

Argued before DAVIS and EYLER, JJ., and SHERRIE L. KRAUSER, Judge (Specially Assigned).

SHERRIE L. KRAUSER, Judge (Specially Assigned).

Jacklyn Kay Heineman (Ms. Heineman) and her daughter, Toy Michelle Evans, (appellants) appeal from a judgment of the Circuit Court for Baltimore City entered in favor of appellees, Julie W. Bright and her sisters, as personal representatives of the estate of their father, G. Wendel Heineman (the Estate). That judgment awarded to the Estate certain bonds that Ms. Heineman claimed Mr. Heineman gave her during their marriage. Because we find that the trial court did not abuse its discretion in excluding the only testimony available to support Ms. Heineman's claim, we affirm the entry of summary judgment by the circuit court based on that deficiency in the evidence. We therefore decline to determine whether appellants would have had a right to a jury trial had this dispute not been resolved by the entry of summary judgment.

### Facts

Ms. Heineman is the second wife and widow of G. Wendel Heineman, who died on July 11, 1992. Prior to their marriage on October 27, 1989, Ms. Heineman and Mr. Heineman executed a prenuptial agreement in which each party included a list of assets to which the other waived any right. Mr. Heineman's listed assets, to which Ms. Heineman waived all rights, included 29 Maryland Transportation Authority bearer bonds.

At the time of Mr. Heineman's death, those bonds were held in a safe deposit box titled jointly in the names of Jacklyn Kay Heineman and G. Wendel Heineman, with right of survivorship. Until February, 1991, those bonds had been held in a safe deposit box titled solely in Mr. Heineman's name. Ms. Heineman contends that Mr. Heineman transferred the bonds to the jointly titled box in accordance with his intent to give

those bonds to her. She therefore refused the Estate's request to relinquish those bonds upon Mr. Heineman's death and instead moved them to an account she held jointly with her daughter Toy Michelle Evans.

On August 11, 1993, the Estate sued Ms. Heineman and her daughter seeking, *inter alia*, the return of those bonds and all interest that had accrued on them after July 11, 1992. The Estate propounded interrogatories to Ms. Heineman on November 11, 1994; she never responded to them. Discovery was closed on January 12, 1995, by agreement of the parties and court order. The Estate then filed a motion for summary judgment, and appellants filed an opposition to that motion on March 5, 1995. In support of their opposition, appellants presented affidavits from Ms. Heineman and John Fox Graham, Jr., an investment executive who handled Mr. Heineman's accounts, relating conversations in which Mr. Heineman said that he transferred the bonds to the joint safe deposit box in order to give them to his wife. Neither by reply nor in the hearing on the motion did the Estate object to appellants' reliance on those witnesses. On June 5, 1995, the Circuit Court for Baltimore City entered judgment in favor of the Estate upon its motion for summary judgment. Ms. Heineman appealed to this Court, which vacated the judgment and remanded this matter to the circuit court for further proceedings concerning the question of ownership of the bearer bonds. In an unreported opinion, *Heineman, et al. v. Bright, et al.*, No. 1516, September Term, 1995, 111 Md.App. 735 (filed July 5, 1996) a panel of this Court held:

> [Mr. Heineman's] conduct in placing the bonds in the joint safe deposit box together with his subsequent statement that he had given the bonds to [her] are sufficient evidence of donative intent and delivery to present a question for a jury with regard to whether there was a valid *inter vivos* gift of the bonds.

The issue of the admissibility of the proffered evidence was not then before the Court of Special Appeals. The Court found, however, that the proffered evidence established "that there was a genuine dispute of material fact regarding wheth-

er [Mr. Heineman] made an *inter vivos* gift of the bonds to [his wife]."

The trial court stayed all proceedings during the pendency of the appeal. After both parties filed unsuccessful motions for reconsideration in this Court, they both filed petitions for *writ of certiorari* to the Court of Appeals, which were denied on December 11, 1996. On December 31, 1996, the Estate moved to exclude Ms. Heineman's testimony because it included statements made by and transactions with the decedent that were inadmissible under the Dead Man's Statute. Md. Code (1974, 1995 Repl.Vol.), § 9–116 of the Courts & Judicial Proceedings Article.[1] A week later, Ms. Heineman notified the Estate of her intention to call Rosalie Welsh, a family friend, to testify that Mr. Heineman told her of his intention to give Ms. Heineman the bonds shortly after opening the new safe deposit box. On January 17, 1997, ten days later, the Estate moved to exclude the testimony of Ms. Welsh and Mr. Graham because of Ms. Heineman's failure to identify those witnesses before the discovery deadline which had passed two years earlier.

At the conclusion of a hearing at which the trial court granted that motion, the court considered the Estate's oral motion for summary judgment against both appellants. Because the court had excluded all relevant evidence in support of Ms. Heineman's claim, it granted summary judgment against both appellants. There was no specific discussion of the claim of Ms. Evans. Appellants now appeal the trial court's granting of both the Estate's motion to exclude evidence and its motion for summary judgment.

### Exclusion of Witnesses

Appellants concede that Ms. Heineman failed to answer interrogatories and that she identified two fact witnesses only after the expiration of a discovery deadline to which appellants, through counsel, had agreed. Nevertheless, appel-

---

1. Appellants did not appeal from the trial court's ruling with regard to Ms. Heineman's testimony.

lants argue that they were unfairly prejudiced by opposing counsel's inaction. Specifically, they complain that opposing counsel should have either contacted their counsel to discuss Ms. Heineman's failure to respond or sought to compel her answers before moving to exclude the testimony of her witnesses. Appellants apparently contend that Ms. Heineman's failure to respond to interrogatories lawfully propounded by the Estate should be excused by opposing counsel's failure to remind her of her obligation. This argument misconstrues the obligations of counsel.

A party is required to answer lawfully propounded interrogatories "within 30 days after service of the interrogatories." Md. Rule 2–421(b). Ms. Heineman's answers were therefore due on or before December 14, 1994. Md. Rules 2–421(b); 1–203(c). The parties had agreed, and the court ordered, that all discovery be completed by January 12, 1995. *See* Md. Rule 2–401(b). Ms. Heineman concedes that she never answered the interrogatories which requested that she identify all fact witnesses and summarize the material facts within their knowledge. She contends nonetheless that the trial court should not have excluded her witnesses without any effort by opposing counsel to resolve the discovery dispute, as she claims Maryland Rule 2–431 requires.[2]

Appellant misconstrues the import of Maryland Rule 2–431. That rule requires an attorney seeking redress from the court to first certify that he or she has made "good faith attempts to discuss with the opposing attorney the resolution of the dispute and ... that they are unable to reach agreement on the disputed issues." Discussions between counsel regarding propounded interrogatories may be fruitful, for example, when there is a dispute about whether the number of interrogatories exceeds thirty, whether a response is complete, or whether a response is privileged. In the case at bar, there was no such

---

2. The interrogatories in question were directed only to Ms. Heineman. No distinction was made by appellants, here or in the trial court, with regard to the effect of her discovery violations on her daughter's position.

dispute. Rather, Ms. Heineman simply failed to respond to an entire set of interrogatories. She did not claim any privilege or offer any objection to the interrogatories; she just ignored them.

When a party fails to respond to interrogatories, the opposing party may move for immediate sanctions without a motion to compel. Md. Rule 2–432(a). Here, two years elapsed before appellees sought those sanctions. The Estate, however, was not required to provide any additional warning to Ms. Heineman before seeking to exclude evidence which should have been provided in response to the unanswered interrogatories.

Appellants asserted in their opposition to the first motion for summary judgment that both Ms. Heineman and John Fox Graham, Jr. intended to testify to statements made by the decedent to each of them in which he disclosed his intention to give the bonds to his wife. Although the trial court entered summary judgment, this Court found that the affidavits of those witnesses were sufficient to establish a genuine dispute of material fact. The Estate did not and was not required to reply that the opposition was defective because it relied on excludable testimony. Appellants relied to their detriment on the erroneous assumption that the Estate would not later seek to exclude that testimony on other grounds.

An order "prohibiting [a] party from introducing designated matters in evidence" is a permissible sanction for that party's failure to respond to interrogatories. Md. Rule 2–433(a)(2). Appellants nevertheless contend that the trial court abused its discretion by excluding evidence because of Ms. Heineman's violation of the discovery rules, where that exclusion was tantamount to granting summary judgment to the Estate.

A trial court is entrusted with "[a] large measure of discretion . . . in applying sanctions for failure to comply with the rules relating to discovery." *Tydings v. Allied Painting & Dec. Co.*, 13 Md.App. 433, 436, 283 A.2d 635 (1971); *Lynch v. R.E. Tull & Sons, Inc.*, 251 Md. 260, 247 A.2d 286 (1968). In

exercising that discretion, however, a trial court must consider:

(1) whether the disclosure violation was technical or substantial;

(2) the timing of the ultimate disclosure;

(3) the reason, if any, for the violation;

(4) the degree of prejudice to the parties respectively offering and opposing the evidence; and

(5) whether any resulting prejudice might be cured by a postponement and, if so, the overall desirability of a continuance.

*Taliaferro v. State*, 295 Md. 376, 390–91, 456 A.2d 29 (1983). Although this Court found that, in a case involving extraordinarily complex litigation, such as the asbestos cases, strict adherence to a pretrial order may be of greater importance than any of the factors identified by the *Taliaferro* Court, we acknowledged that those factors must still be given considerable weight in other cases. *Eagle–Picher v. Balbos*, 84 Md. App. 10, 34, 578 A.2d 228 (1990). Thus, we examine the issue presented in light of the *Taliaferro* factors.

### 1. *Technical or Substantial Violation*

Appellants contend that the failure to identify John Fox Graham, Jr. within the discovery deadline was merely a technical violation because he was identified only two months later, nearly two years before the Estate moved to exclude his testimony. They can offer no such argument with regard to Rosalie Welsh, who was not identified until after the revival of the litigation.

While appellants certainly apprised the Estate of Mr. Graham's potential testimony in their opposition to the motion for summary judgment, that identification is insufficient to overcome Ms. Heineman's total failure to respond to interrogatories. A litigant who ignores discovery requests cannot be permitted to create her own rules of disclosure and identification of witnesses. We find, therefore, that her failure to identify both of these witnesses within the discovery deadline

was a substantial and not a technical violation of the discovery rules.

## 2. *Timing of Disclosure*

After the parties agreed to several extensions of the discovery deadline, discovery was finally closed on January 12, 1995. Although the Estate propounded interrogatories to Ms. Heineman two months before, requesting that she identify fact witnesses and disclose their relevant knowledge, she failed to respond to them. The Estate, relying on Ms. Heineman's lack of evidence, then filed a motion for summary judgment. In opposition to that motion, four months after the interrogatories were sent to her, appellants proffered an affidavit from John Fox Graham, Jr., one of the excluded witnesses, to establish a genuine dispute of material fact. Two years later, after a lengthy appellate process, the Estate sought to exclude that testimony. Appellants then proffered the testimony of an additional witness, Ms. Rosalie Welsh, without any explanation for their failure to previously identify her.

The delay in identifying these witnesses was substantial, particularly with regard to Ms. Welsh. Appellants identified John Fox Graham, Jr. three months after responses to interrogatories were due, and two months after the close of discovery, in their opposition to the Estate's motion for summary judgment. They identified Rosalie Welsh two years after the close of discovery, shortly before the rescheduled trial date after the case was remanded from this Court. Appellants' grossly dilatory identification of witnesses cannot rectify Ms. Heineman's utter failure to respond to interrogatories in this case.

## 3. *Reason for Violation*

Ms. Heineman offered no reason for her failure to respond to interrogatories. This factor, therefore, must be weighed against admission of the disputed evidence.

### 4. Degree of Prejudice

The Estate argues that it was substantially prejudiced because it was unable to depose the proffered witnesses during the discovery period. Appellants contend, on the other hand, that the discovery period could have been reopened, without prejudice to anyone, at least after the case was remanded to the trial court. Further, they point out that the prejudice to appellants was substantial because the exclusion of these witnesses resulted in the entry of judgment in favor of the Estate. The entry of judgment against appellants clearly is of greater prejudicial impact than would be suffered by appellees in delayed depositions. Although the court has a substantial interest in discouraging the blatant disregard of discovery deadlines by litigants, we find that, in the case at bar, the prejudice to appellants outweighs the prejudice to appellees.

### 5. Curative Postponement

Appellants argue persuasively that no curative postponement was necessary because the trial was postponed for other reasons, resulting in approximately six months in which the Estate could have deposed any or all of the proffered witnesses. The trial court properly rejected appellants' request for postponement to reopen discovery for the benefit of the Estate, but there is no indication that a further postponement would have been required.

In reviewing the trial judge's exercise of discretion in this regard, we must weigh all of the noted factors. Clearly, the nature of the violation, timing of the ultimate disclosure, and failure to provide any reason for the violation must be weighed heavily against appellants. The fact that no further postponement was necessary and that the prejudice to appellants was substantial, however, must be weighed in their favor. The trial judge was required to weigh the facts relating to each of these five factors, and to exercise his discretion in balancing the facts against the sanction of excluding essential witnesses. In this case, it is clear that the trial court did so.

Suit was filed on August 11, 1993. For a variety of reasons, discovery was extended by agreement of the parties through January 1995. Two months later, appellants identified one witness in opposition to the Estate's motion for summary judgment, which was itself based upon the assumption that appellants' evidence was limited to any witnesses identified prior to the conclusion of discovery. Appellants did not identify the second excluded witness until two years later, when the case was again set for trial after the exhaustion of appeals. Although in the case at bar we would weigh two of the five *Taliaferro* factors in Ms. Heineman's favor, we cannot conclude that the trial judge abused his discretion when he determined that the balance of these factors weighed heavily in favor of excluding the two proffered witnesses.

### Entry of Judgment Against Appellant Heineman

The parties agree that the exclusion of the two proffered witnesses left Ms. Heineman without any evidentiary support for her claim of ownership of the bonds. She contends that the irreparable prejudice she suffered by the exclusion of her witnesses was tantamount to a ruling on the merits of her claim, and thus that the trial judge abused his discretion both in excluding her witnesses and in entering judgment against her. Appellant misconstrues prior rulings of this Court regarding the trial court's exercise of discretion in such rulings.

■ In *Shelton v. Kirson*, 119 Md.App. 325, 333, 705 A.2d 25 (1998), this Court addressed the identical issue, and stated:

If Judge Noel were held to have erroneously precluded the appellant from offering evidence . . . and if Judge Mitchell's granting of summary judgment had been based on that lack of evidence, Judge Noel's hypothesized error in that regard would *ipso facto* be reason enough to reverse the judgment in this case. If, on the other hand, Judge Noel's preclusion of the evidence was proper, as we have held it was, then the appellant concedes that the granting of summary judgment would logically have followed from the resulting lack of evidence and she would have no basis for attacking the granting of summary judgment.

Here, as in *Shelton*, we conclude that the trial court did not err in excluding the evidence necessary to sustain appellant's claim. The granting of summary judgment followed logically and necessarily from that exclusion. Thus, the trial court did not err in granting the summary judgment in the same hearing in which the parties argued the issue of witness exclusion. An additional hearing was unnecessary. The parties were clearly prepared, as was the court, to address the conclusion that logically followed the exclusion of the witnesses. Summary judgment was, therefore, properly granted.

## Entry of Judgment Against Appellant Evans

At the conclusion of the hearing regarding the exclusion of appellants' witnesses, the trial court considered the Estate's oral motion for summary judgment. With little further discussion, judgment was entered against both appellants based on the exclusion of essential witnesses. Appellant Toy Michelle Evans contends that the trial court abused its discretion in entering judgment against her based on co-appellant's failure to provide discovery.

The relevant facts are not in dispute. The Estate seeks return of the bonds and all interest earned on them from the date of Mr. Heineman's death. Ms. Evans contends that she is a joint owner of the bonds which were given to her mother by Mr. Heineman, and which her mother placed in an account jointly titled in the names of the appellants after Mr. Heineman's death. In order to defend against the Estate's claim, Ms. Evans must establish that the bonds rightfully belonged to her mother when her mother gave her joint ownership of them.

Certainly discovery sanctions against one party should not adversely affect another who has not participated in the discovery proceedings. We therefore agree that Ms. Evans cannot be precluded from calling witnesses simply because those witnesses are unavailable to Ms. Heineman. Thus, Ms. Evans would be able to rely on the testimony of Mr.

Graham and Ms. Welsh regarding Mr. Heineman's intent to transfer the bonds to Ms. Heineman during his lifetime.

■ An *inter vivos* transfer, however, requires three elements: donative intent, delivery, and acceptance by the donee. *Dorsey v. Dorsey*, 302 Md. 312, 318, 487 A.2d 1181 (1985). Even if Ms. Evans were able to establish the first element, donative intent, through the testimony of the named witnesses, she would be unable to establish the remaining elements without the testimony of her mother, Ms. Heineman. Appellants elected not to appeal the trial court's determination that Ms. Heineman's testimony must be excluded.[3]

Whether or not that testimony should be available to Ms. Evans is therefore not before us. Without that testimony, however, she cannot establish either the delivery of the bonds to Ms. Heineman or Ms. Heineman's acceptance of them. The exclusion of Ms. Heineman's testimony is fatal to Ms. Evans's defense, as it was to her mother's defense.

We therefore find that the trial court did not err in entering summary judgment against both appellants.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**

---

**3.** The decision of this Court in *Reddy v. Mody*, 39 Md.App. 675, 388 A.2d 555 (1978), applying the dead man's statute to a survival action brought by an estate, but not to the wrongful death actions brought by a surviving spouse and children in the same suit, suggests that separate consideration should have been given to Ms. Evans's rights.