921 A.2d 912

**Lakeya MADDOX, Individually, etc.**

**v.**

**Francis L. STONE t/a STONE ELECTRICAL CONTRACTORS.**

**No. 1179, Sept. Term, 2006.**

Court of Special Appeals of Maryland.

May 2, 2007.

492

Daniel M. Clements (Emily C. Malarkey, on brief), Baltimore, for appellant.

Charles E. Wilson, III (Amy Leete Leone, on brief), Rockville, for appellee.

Panel HOLLANDER, MEREDITH and RAYMOND G. THIEME, JR., (retired, specially assigned), JJ.

MEREDITH, J.

Lakeya Maddox, individually, and as parent of her minor children, challenges in this appeal the decisions of the Circuit Court for Somerset County to (1) grant appellee Stone Electrical Contractors's motion to strike appellants' expert witness, and (2) deny the appellants' motion for substitution of an expert and/or for reconsideration of the court's order to strike appellants' expert witness.[1] We hold that the circuit court abused its discretion in striking one of the appellants' expert witnesses because of a lack of strict compliance with the scheduling order. Accordingly, we need not reach the question of whether, upon learning of the death of appellants' other expert witness, the circuit court abused its discretion in not allowing the appellants to substitute the earlier stricken expert for the deceased expert.

We vacate the judgment of the circuit court and remand the case for further proceedings consistent with this opinion.

## Facts and Procedural History

On November 27, 2003, at approximately 5:44 a.m., Lakeya Maddox and her two children were awakened by the smoke alarms in their home, a rental property located at 30700 S. Division Street, Princess Anne, Maryland 21853. A fire had originated earlier that night in the home's storage room and had spread throughout the house. The appellants were able to escape the burning house, but sustained injuries. As a result of the injuries sustained in the fire, the appellants filed a complaint in the Circuit Court for Somerset County alleging

---

1. Appellant presents the following two questions:
    1. Because the plaintiffs' expert witness died, leaving them with no expert to testify, should the plaintiffs have been permitted to substitute an expert?
    2. Because the plaintiffs complied with the scheduling order, did the circuit court abuse its discretion in striking their original expert witness?

negligence on the part of: the owner of the property, Richard Mantz; the property manager, Nelson's Real Estate; the Miller Electric Company; and the appellee, Stone Electrical Contractors. Appellants were eventually able to settle their dispute with all of the defendants except the appellee.

On July 12, 2005, pursuant to Maryland Rule 2–504, the circuit court issued a scheduling order which provided, among other things, that:

1. Each person that any party intends to call as an expert witness to support a claim or counter-claim must be identified and all information specified in Md. Rule 2–402(f)(1)(A) must be disclosed to the Court and other parties at least FOUR MONTHS prior to the Trial Date;

2. Each person that any party intends to call as an expert witness to support the defense of a claim or counter-claim must be identified and all information specified in Md. Rule 2–402(f)(1)(A) must be disclosed to the Court and other parties at least THREE MONTHS prior to the Trial Date[.]

*　　*　　*

5. All discovery authorized by the Maryland Rules must be undertaken so as to be concluded (including resolution of discovery disputes) at least TWO MONTHS prior to the Trial Date....

Because the trial date was scheduled for July 24, 2006, the appellants' deadline for disclosing expert witnesses and Rule 2–402(f)(1)(A) information was March 24, 2006, and Stone's deadline was April 24, 2006.[2] The close of discovery for the case was May 24, 2006.

---

2. Maryland Rule 2–402(f)(1)(A) states:

> A party by interrogatories may require any other party to identify each person, other than a party, whom the other party expects to call as an expert witness at trial; to state the subject matter on which the expert is expected to testify and a summary of the grounds for each opinion; and to produce any written report made by the expert

Although appellants disclosed the names of their proposed experts on March 9, 2006, including "Mike Wald of Investigating Engineering, Inc. of Annapolis, Maryland," Wald did not provide a written report until April 26, 2006, which was after the scheduling order's deadline for appellants to disclose "all information specified in Md. Rule 2–402(f)(1)(A)."

In their answers to interrogatories, filed prior to the March 24, 2006, deadline, appellants identified Deputy State Fire Marshall Matt Stevens as an expert, and attached a copy of his investigation report. Appellants also indicated that they reserved the right to call any expert designated by the defendants. One such expert was an electrical investigator, Joseph C. Hauf, III, who had issued a report dated July 2, 2004, expressing an opinion that the fire was "caused by the loss of the electrical ground to the [home's electric] service panel." On March 9, 2006, appellants' counsel wrote to all the defense counsel, including Stone's counsel, disclosing that appellants had retained Mike Wald as an additional expert, stating:

> I believe our Answers to Interrogatories have already indicated that we intend to call any of the defense experts. Let me make perfectly clear that Plaintiffs intend to call the experts whose names are on the reports given to Nationwide Insurance [which included Joseph Hauf]. Please also understand that I intend to call the Fire Marshall whose deposition was taken. Finally, I have retained Mike Wald of Investigating Engineering, Inc. of Annapolis, Maryland as an additional expert and expect to call him as well.

By letter dated March 28, 2006, Stone's counsel advised appellants' counsel that he "would like to schedule the deposition of plaintiffs['] recently noted expert, Mike Wald of Investigating Engineering, Inc. of Annapolis, Maryland...." Stone's counsel suggested the dates "May 3, 4, [or] 11, 2006."

On April 27, 2006, appellants' counsel faxed a copy of Wald's report dated April 26, 2006, to Stone's counsel. Wald's report

---

concerning those findings and opinions. A party also may take the deposition of the expert.

opined that "the cause of this fire was the lack of a system ground at this residence." Wald further "concluded that this ground conductor was not properly installed by Stone Electric in the first place." In summary, Wald opined: "[T]his fire was the result of illegal and improper electrical work performed by Stone. Specifically, the primary ground connections were not installed."

On May 1, 2006, counsel for Stone wrote to counsel for appellants, stating: "In light of your having disclosed your expert's opinions, I would ask that you please voluntarily consent to my now retaining an expert in this case...." Appellants' counsel replied via e-mail on May 2, 2006, stating: "Of course, I have no problem with your finding and designating an expert at this time...."

Also on May 1, 2006, Stone filed a motion to strike Wald, claiming that, because of the post-deadline receipt of Wald's report, Stone "now has no ability to counter the new opinion by the plaintiff's expert." Stone asked the trial court to preclude the plaintiffs from calling Wald, or, in the alternative, extend the deadline for Stone to retain an expert and continue the trial date. While the motion was pending, Stone deposed Wald on May 17, 2006.

On May 26, 2006, the circuit court held a hearing on Stone's motion for an extension of the expert discovery deadline and/or for a continuance, or, in the alternative, for an order precluding Wald from testifying at trial. Stone pointed out that he did not receive Wald's report until two days after Stone's deadline for identifying defense experts, and urged the court to extend Stone's deadline and reopen discovery. The court responded: "Well, I don't think discovery is going to get reopened ... and I don't think the trial date is going to be continued." At that point in the hearing, the court focused on Stone's motion to preclude appellants from using Wald as an expert. The court noted that Wald's report was provided "a month and two days after the deadline [in the scheduling order]." Concluding that appellants had not satisfied the requirement of the scheduling order to disclose all Rule 2–

402(f)(1)(A) information at least three months prior to the trial date, the court granted the motion to strike the expert, and entered an order "that plaintiff's expert Michael Wald is now stricken." The court explained that it was granting the motion to exclude appellants' expert because appellants had not met the disclosure deadline established in the court's scheduling order. The court stated:

> THE COURT[:] All right[.] My finding is that the plaintiff has failed to comply with Section 2, Paragraph 2 of [the court's] scheduling order in that the expert not only [has to be] identified[,] but all information specified in Rule 2–402(f)(1)(A) must be disclosed to the court and the parties at least three months prior to the trial date[.] I will concede that [plaintiffs' counsel] identified the witness on March the 9th, well within the time period, but there is nothing in the court file to indicate that he advised the court[,] and apparently nothing to indicate in writing he advised any of the parties[,] well within the time period[.] Certainly he did not advise the court[.] So I'm granting the motion to strike the expert and I'm signing that order right now.

On June 5, 2006, appellants filed a motion for substitution of an expert and for reconsideration of the court's order to strike Wald. In their motion, the appellants asserted that earlier that day, they were, for the first time, able to confirm that another expert they had named on the issue of causation, Joseph C. Hauf, III, had passed away.[3] Appellants asked the court to permit Wald, even though he had been previously stricken, to substitute for the deceased Hauf. On June 28, 2006, the circuit court, without a hearing and without issuing any opinion, denied the appellants' motion for substitution of an expert and for reconsideration of the order precluding the use of Wald.

Stone renewed its motion for summary judgment, arguing that the appellants could not prove causation and Stone was entitled to judgment as a matter of law. Appellants asked the

---

**3.** During the course of the May 26, 2006, motion hearing, counsel for Stone stated that it was his understanding that Hauf had died. Appellants' counsel expressed his surprise at the comment on that date.

court to reconsider its ruling prohibiting the use of Wald as a substitute for the deceased Hauf. The circuit court refused to reconsider its rulings regarding the plaintiffs' witnesses, and, because appellants conceded they could not prove causation if they could not call an expert witness on causation, the court granted summary judgment for Stone. Appellants timely noted this appeal.[4]

## Discussion

Appellants contend that, because they "substantially complied" with the scheduling order, the trial court abused its discretion in striking Wald as an expert witness. They argue that they adequately complied with Maryland law regarding adherence to scheduling orders and that, even if they did not, "the sanction of striking an expert witness is a drastic and case-shattering sanction that is reserved for the most egregious of discovery violations, not supported by the facts of this case."

Maryland Rule 2–504(a)(1) requires the circuit court to enter a scheduling order in most civil actions. In *Dorsey v. Nold,* 362 Md. 241, 255, 765 A.2d 79 (2001), the Court of Appeals stated:

The principal function of a scheduling order is to move the case efficiently through the litigation process by setting specific dates or time limits for anticipated litigation events to occur.

*Dorsey* involved the disclosure six days before trial that the plaintiffs intended to call an assistant medical examiner as an expert witness. Although the Court of Appeals ultimately concluded that the witness was not one who was required to be disclosed as an expert under then Rule 2–402(e)(1)—the forerunner of Rule 2–402(f)(1)—the Court made extensive

---

4. Although this is an appeal following the grant of summary judgment, the propriety of the summary judgment ruling is not at issue here. Counsel for appellants conceded that without Hauf or Wald appellants would be unable to prove a case against Stone, and that unless the court would revise its rulings as to plaintiffs' experts, summary judgment would be appropriate.

comments about the interplay between the rules governing discovery and scheduling orders.[5] The Court observed, 362 Md. at 256, 765 A.2d 79:

> Rule 2–504 is not a discovery rule. It is not included in the Title 2, Chapter 400 rules on discovery and, except as provided in § (b)(2)(A), is not intended either to enlarge or constrict the scope of discovery. Its function, to the extent it references discovery in § (b)(1), is to provide for the setting of time limits on certain discovery events; it is, in that regard, a rule of timing, not of substance.

In *Naughton v. Bankier,* 114 Md.App. 641, 653, 691 A.2d 712 (1997), this Court observed that, although scheduling orders should not be applied in a manner that is "unyieldingly rigid," litigants must make good faith and reasonable efforts to substantially comply with the court's deadlines:

> Though such [scheduling] orders are generally not unyieldingly rigid as extraordinary circumstances which warrant modification do occur, they serve to light the way down the corridors which pending cases will proceed. Indeed, while absolute compliance with scheduling orders is not always feasible from a practical standpoint, we think it quite reasonable for Maryland courts to demand at least substantial compliance, or, *at the barest minimum,* a good faith and earnest effort toward compliance.

(Emphasis in original.) *See also Wormwood v. Batching Systems, Inc.,* 124 Md.App. 695, 702–05, 723 A.2d 568 (1999) (noting that substantial compliance with the Maryland Rules will be deemed sufficient where the opposing party has suffered no prejudice). *Cf. Swann v. Prudential Insurance Company of America,* 95 Md.App. 365, 382, 620 A.2d 989 (1993) (trial court did not abuse discretion in permitting late named expert to testify where opposing party had opportunity to take deposition), *rev'd on other grounds,* 334 Md. 231, 638 A.2d 762 (1994).

---

**5.** Effective January 1, 2004, Rule 2–504(b)(1)(B) was amended to replace the cross reference to Rule 2–402(e)(1)(A) with a reference to the successor rule, Rule 2–402(f)(1).

In the related context of discovery deadlines, we have commented: "While it is true that the Maryland Rules of Procedure are to be 'strictly followed[,]' the discovery rules in particular are to be 'liberally construed' in order to effectuate their purpose." *Gonzales v. Boas,* 162 Md.App. 344, 356 n. 10, 874 A.2d 491 (internal citations omitted), *cert. denied,* 388 Md. 405, 879 A.2d 1086 (2005). *Cf. Food Lion v. McNeill,* 393 Md. 715, 734, 904 A.2d 464 (2006) ("Rules 2–403 and 2–432 provide a procedure and a mechanism whereby the [discovery] compliance issues and disputes may be, and should be, resolved.").

Appellants maintain that they have met the "substantial compliance" or "good faith and earnest effort" test because Wald was named two weeks before the scheduling order deadline, and his report was provided to opposing counsel immediately as soon as it was available, 34 days after the deadline but well in advance of trial and prior to the close of discovery. Appellants emphasize that they cooperated in making Wald available for deposition, and that Wald was deposed over two full months prior to trial and prior to the date established in the scheduling order for completion of all discovery. Appellants argue that, because Wald was deposed well in advance of trial, Stone was not deprived of the ability to prepare a proper defense.

Consequently, appellants claimed that they substantially complied with the scheduling scheme that was described by the Court of Appeals in *Dorsey* as contemplating the disclosure of the experts' opinions in sufficient time to complete a deposition prior to the close of all discovery. The Court stated in *Dorsey, supra,* 362 Md. at 256, 765 A.2d 79:

> Rule 2–504(b)(1)(B) anticipates that the party receiving that information [regarding expert witnesses] by the date set by the scheduling order will have some additional time in which to pursue the further discovery allowed under [current Rule 2–402(f)(1)(A)]—ordinarily a deposition of the witness. The date for the completion of that phase is the date specified in the scheduling order pursuant to Rule 2–504(b)(1)(D)—the completion of all discovery.

■ Notwithstanding the appellants' claim of substantial compliance with the scheduling order, the circuit court correctly noted that Wald's written report setting forth the information described in Rule 2–402(f)(1)(A) was delivered to the appellee 34 days after the deadline established in the scheduling order. The Court of Appeals noted in *Admiral Mortgage v. Cooper,* 357 Md. 533, 545, 745 A.2d 1026 (2000), that "the governing principle" is that "the appropriate sanction for a discovery or scheduling order violation is largely discretionary with the trial court." But the Court also qualified that "governing principle" by pointing out "the more draconian sanctions, of dismissing a claim or precluding the evidence necessary to support a claim, are normally reserved for persistent and deliberate violations that actually cause some prejudice, either to a party or to the court." *Id.* The scheduling order is not meant to function as a statute of limitations, and good faith substantial compliance with the scheduling order is ordinarily sufficient to forestay a case-ending sanction. *See, e. g., Manzano v. Southern Maryland Hospital,* 347 Md. 17, 29, 698 A.2d 531 (1997) ("dismissal of a claim ... is warranted only in cases of egregious misconduct"). *Cf. Thomas v. State,* 397 Md. 557, 572, 919 A.2d 49, 58 (2007) ("Exclusion of evidence for a discovery violation is not a favored sanction and is one of the most drastic measures that can be imposed.")

■ Accordingly, although the decision of whether to exclude a key witness because of a party's failure to meet the deadlines in a scheduling order is generally committed to the discretion of the trial court, the imposition of such a draconian sanction must be supported by circumstances that warrant the exercise of the court's discretion in such a manner. *See, e.g., Taliaferro v. State,* 295 Md. 376, 398, 456 A.2d 29 (alibi witness disclosed on last day of trial), *cert. denied,* 461 U.S. 948, 103 S.Ct. 2114, 77 L.Ed.2d 1307 (1983); *Lowery v. Smithsburg Emergency Medical Service,* 173 Md.App. 662, 676, 920 A.2d 546, 554 (2007) (expert report filed two and one-half months after close of discovery, just 12 days before trial); *Helman v. Mendelson,* 138 Md.App. 29, 43–47, 769 A.2d 1025 (report filed

two months after close of all discovery with no good cause for delay), *cert. denied,* 365 Md. 66, 775 A.2d 1216 (2001); *Heineman v. Bright,* 124 Md.App. 1, 7, 720 A.2d 1182 (1998) (party did not respond to interrogatories at all; "she just ignored them"); *Shelton v. Kirson,* 119 Md.App. 325, 332, 705 A.2d 25 (expert named almost twelve months after deadline), *cert. denied,* 349 Md. 236, 707 A.2d 1329 (1998).

Although the abuse of discretion standard for appellate review is highly deferential to the many discretionary decisions of trial courts, *see, e.g., Wilson v. John Crane, Inc.,* 385 Md. 185, 198–99, 867 A.2d 1077 (2005), we nevertheless will reverse a decision that is committed to the sound discretion of a trial judge if we are unable to discern from the record that there was an analysis of the relevant facts and circumstances that resulted in the *exercise* of discretion. As the Court of Appeals stated in *Nelson v. State,* 315 Md. 62, 70, 553 A.2d 667 (1989):

> A trial judge is blessed with discretion in the exercise of many of his functions. The discretion is broad but it is not boundless. If the judge has discretion, he must use it and the record must show that he used it. He must use it, however, soundly or it is abused. Discretion is abused, for example, if the judge in his exercise of it is arbitrary or capricious, or without the letter or beyond the reason of the law.

To similar effect, *see State v. Wilkins,* 393 Md. 269, 278–79, 900 A.2d 765 (2006); *Cooley v. State,* 385 Md. 165, 175, 867 A.2d 1065 (2005); *Jenkins v. State,* 375 Md. 284, 295–96, 825 A.2d 1008 (2003).

As noted in *Nelson* and other cases, the record must reflect that the judge exercised discretion and did not simply apply some predetermined position. *Gunning v. State,* 347 Md. 332, 351, 701 A.2d 374 (1997) (A "judge's unyielding adherence to [a] predetermined position amounts to a … failure to properly exercise discretion."); *Maus v. State,* 311 Md. 85, 108, 532 A.2d 1066 (1987) ("When a court must

exercise discretion, failure to do so is error, and ordinarily requires reversal."); *Colter v. State,* 297 Md. 423, 428, 466 A.2d 1286 (1983) (trial judge committed reversible error when he "applied a hard and fast rule[ ] of not granting a continuance"); *Taliaferro, supra,* 295 Md. at 390, 456 A.2d 29 ("The exercise of discretion contemplates that the trial court will ordinarily analyze the facts and not act, particularly to exclude, simply on the basis of a violation disclosed by the file."); *Scully v. Tauber,* 138 Md.App. 423, 431, 771 A.2d 550 ("When it is not clear that discretion was exercised, reversal is required."), *cert. denied,* 365 Md. 268, 778 A.2d 383 (2001); *Hart v. Miller,* 65 Md.App. 620, 627, 501 A.2d 872 (1985) ("Failure to exercise choice in a situation calling for choice is an abuse of discretion, because it assumes the existence of a rule that admits of but one answer."), *cert. denied,* 305 Md. 621, 505 A.2d 1342 (1986).

In *Taliaferro,* 295 Md. at 390–91, 456 A.2d 29, a 4–3 majority of the Court of Appeals affirmed the exclusion of an alibi witness who had been disclosed for the first time on the last day of the trial, in contravention of the rule (then Rule 741, now Rule 4–263(d)(3)) requiring pretrial disclosure of such witnesses within ten days after being served with a discovery request seeking the identity of alibi witnesses. In the course of explaining why the exclusion of that key witness was not an abuse of discretion under the facts of that case, the Court summarized a variety of key factors, often referred to as "the *Taliaferro* factors," that should be considered by the trial judge, stating:

> Under the approach taken by most courts, whether the exclusion of alibi witness testimony is an abuse of discretion turns on the facts of the particular case. Principal among the relevant factors which recur in the opinions are whether the disclosure violation was technical or substantial, the timing of the ultimate disclosure, the reason, if any, for the violation, the degree of prejudice to the parties respectively offering and opposing the evidence, whether any resulting prejudice might be cured by a postponement and, if so, the overall desirability of a continuance. Frequently these fac-

tors overlap. They do not lend themselves to a compartmental analysis.

In *Taliaferro,* the Court contrasted the facts of Taliaferro's case with two cases that were illustrative of situations in which a trial court had abused its discretion by excluding the alibi witness. Distinguishing Taliaferro's case from *State v. Silva,* 118 R.I. 408, 374 A.2d 106 (1977), the Court stated, 295 Md. at 391, 456 A.2d 29:

> In the case at hand [*i.e.,* Taliaferro's case,] the rule violation was a gross one. There was no attempt at compliance. This is not a case where notice was given a few days late, but well in advance of trial, or given in a technically defective form. Illustrative of what was held to be a technical non-compliance is *State v. Silva,* 118 R.I. 408, 374 A.2d 106 (1977). Six months prior to trial, but 10 days late under the court rule, the defendant filed a notice of alibi defense, stating that he spent the entire evening in question at two specified addresses and identifying three alibi witnesses. Five weeks prior to trial the disclosure was supplemented by an additional witness' name, without an address. The trial court excluded the alibi testimony for lack of compliance with the rule's specificity requirements. It was held there was substantial compliance with the letter and spirit of the rule and that "the trial court abused its discretion in excluding the defendant's alibi testimony." *Id.* at 412, 374 A.2d at 109.

And in contrast to Taliaferro's failure to offer any justifying excuse for his non-disclosure of the alibi witness he had known about for many months prior to the trial, the Court referred to *Williams v. State,* 97 Nev. 1, 620 P.2d 1263 (1981), a case in which the trial court was held to have abused its discretion by excluding the alibi witness. The Court of Appeals stated, 295 Md. at 393–94, 456 A.2d 29:

> There the accused had furnished counsel with the names of four alibi witnesses, and counsel had timely dictated the notice, but through inadvertence, had failed to file it until seven days prior to the scheduled trial date. The applicable

rule required filing ten days prior to trial. However, because of a postponement, trial did not actually begin until ten days after the filing of the notice. Further, the State's case rested exclusively on the testimony of the victim. Under these circumstances it was held that good cause had been shown for relief from strict compliance with the statute.

The same year that the Court of Appeals decided *Taliaferro*, the Court revisited the issue of whether a trial judge had abused his discretion in excluding a witness who had not been disclosed within the time limit prescribed by Rule 741. This time, in *Colter, supra*, 297 Md. at 428, 466 A.2d 1286, the Court found that the exclusion of the witness was an abuse of discretion because, "[b]ased on the record in [Colter's] case[,] it appears the trial judge applied a hard and fast rule, of not granting a continuance." The Court explained, *id.* at 430–31, 466 A.2d 1286:

> The trial judge essentially applied Rule 741 as a mandatory rule excluding the testimony of an undisclosed alibi witness upon the failure of the defendant to comply with the notice requirement. He did not consider, in determining whether to exercise his discretionary power, any of the relevant factors set forth in *Taliaferro*, or the alternative sanctions which might have been appropriate under the circumstances of this case. Accordingly, it is clear that the trial judge did not exercise the discretion granted him under the rule.

██ Like the Court of Appeals in *Colter*, we cannot discern from the record in the present case that the trial court took into consideration any factors such as those identified in *Taliaferro*. The trial court indicated an unwillingness to consider extending Stone's expert deadline or to consider reopening discovery, or even to consider the merits of appellants' claim of substantial compliance with the scheduling order. The transcripts from the motions hearings indicate that the trial court did not consider (1) that the Court of Appeals has held that Rule 2–504 is "a rule of timing, not of substance," *Dorsey, supra*, 362 Md. at 256, 765 A.2d 79; (2)

that appellants provided Stone with Wald's expert report as soon as they received it and a few weeks in advance of Wald's deposition that was scheduled on a mutually agreed date; (3) that Stone could not claim surprise because Wald was deposed well in advance of trial; and (4) that Stone itself argued for a postponement of the deadline for its own expert disclosure and was amenable to a continuance of the trial date.

Nor did the trial court consider whether any option other than exclusion of the appellants' expert would be an appropriate response to the lack of strict compliance with the discovery deadlines imposed by the scheduling order. As in *Colter, supra,* 297 Md. at 429, 466 A.2d 1286, "the court gave scant consideration to the degree of prejudice to the parties, or 'whether any resulting prejudice might be cured by a postponement and, if so, the overall desirability of a continuance.'" (Quoting *Taliaferro, supra,* 295 Md. at 391, 456 A.2d 29.)

Because the trial court did not appear to consider any of the *Taliaferro* factors or appear to exercise any discretion at all in making its decision to exclude a material witness, the court abused its discretion in striking Wald in the first instance. The abuse was perhaps compounded when the court, again without explaining how it was exercising discretion, refused to consider any accommodation for appellants after it was confirmed that one of the witnesses they had disclosed—Joseph C. Hauf, III—had died. Similarly, it would have also been an abuse of discretion under the facts of this case for the court to refuse to adjust the scheduling order in a manner that would give Stone a reasonable opportunity to seek out and name a responsive expert.

The rule requiring the entry of scheduling orders was intended to promote the efficient management of the trial court's docket, not to erect additional opportunities for a court to dismiss meritorious claims for lack of strict compliance with arbitrary deadlines. In the quest to achieve greater judicial efficiency through the use of case management techniques such as scheduling orders, the courts must not lose sight of their primary responsibility: to render justice and resolve

disputes in a fair and just manner. Scheduling orders are but the means to an end, not an end in and of themselves.

That is not to say that trial counsel and litigants are free to treat scheduling orders as mere suggestions or imprecise guidelines for trial preparation. Scheduling orders must be given respect as orders of the circuit court, and the court may, under appropriate circumstances, impose sanctions upon parties who fail to comply with the deadlines in scheduling orders. Although the Maryland Rules do not prescribe any sanctions for failure to strictly adhere to all time limits imposed by a Rule 2–504 scheduling order, there is inherent power for the courts to "enforce their scheduling orders through the threat and imposition of sanctions." *Manzano, supra,* 347 Md. at 29, 698 A.2d 531.

But the imposition of a sanction that precludes a material witness from testifying, and, consequently, effectively dismisses a potentially meritorious claim without a trial, should be reserved for egregious violations of the court's scheduling order, and should be supported by evidence of willful or contemptuous or otherwise opprobrious behavior on the part of the party or counsel. As the Court of Appeals stated in *Manzano,* 347 Md. at 29, 698 A.2d 531 (citations omitted):

> The dismissal of a claim ... is among the gravest of sanctions, ... and as such, is warranted only in cases of egregious misconduct such as "wil[l]ful or contemptuous" behavior, "a deliberate attempt to hinder or prevent effective presentation of defenses or counterclaims," or "stalling in revealing one's own weak claim or defense."

*Cf. Scully, supra,* 138 Md.App. at 432, 771 A.2d 550 ("The appellate courts of Maryland have overturned the imposition of the ultimate sanction ... when there was no record of inordinate delay or contumacious conduct on the part of the party against whom the sanctions were sought."); *Lakewood Engineering & Mfg. v. Quinn,* 91 Md.App. 375, 387, 604 A.2d 535 ("although the trial court is not limited by the requirement that there be willful or contumacious behavior, generally there

exists an element of defiance and/or recalcitrance where the severe sanction of default is imposed [for failure to comply with a discovery order]"), *cert. denied*, 327 Md. 524, 610 A.2d 797 (1992).

In the present case, there was no evidence of willful or contemptuous behavior on the part of either the plaintiffs or their counsel. The names of experts were timely provided, and even though the specific opinions of Wald were not disclosed until 34 days after the scheduling order's deadline for providing the information required by Rule 2–402(f)(1)(A), the expert's detailed report was faxed to defense counsel within 24 hours after it was received by counsel for the appellants. Counsel cooperated in scheduling a deposition of the expert on a mutually agreed date that was prior to the date specified in the scheduling order for the close of discovery. Under such circumstances, we fail to see how an order precluding the testimony of such witness would have been an appropriate exercise of discretion. To exclude a key witness under such circumstances for the simple reason that there was only substantial compliance, rather than strict compliance, with the court's scheduling order appears to us to be an instance of allowing the tail to wag the dog.[6]

Accordingly, we hold that the trial court abused its discretion in granting Stone's motion to strike Wald. We vacate the judgment of the circuit court and remand the case for further proceedings consistent with this opinion. Our decision is without prejudice, of course, to Stone's right to raise any issue

---

**6.** We acknowledge that in the trial court's oral explanation of why it was excluding Wald as a witness, the trial court made reference to appellants' counsel's failure to file the expert's name and Rule 2–402(f)(1)(A) information with the court, suggesting by implication that such failure was another clear violation of the terms of the scheduling order. Even if we assume that there is a rational basis for requiring the parties to file such discovery information with the court (in contrast to the general rule that prohibits filing discovery material with the court, *see* Rule 2–401(d)(2)), we can see no plausible reason that a failure to provide such disclosures to the court simultaneously with notifying opposing counsel, under the circumstances presented in this case, would justify any significant sanction, let alone an order precluding the use of such witness.

with respect to the substance of Wald's testimony during the course of further proceedings on remand.

**JUDGMENT OF THE CIRCUIT COURT FOR SOMER-SET COUNTY IS VACATED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**